Friday, 17-0261, Buncombe. Solid State School District 43 v. Reg. Bd. of School Trustees of Franklin Co. Good morning, everyone. Thank you. Good morning, Your Honors. May it please the Court, Counsel. My name is David Braun. I'm here on behalf of Plaintiff Appellants Buncombe 43 and Vianna 13-3. In this case, Your Honors, the question is whether certain property, a tract of property, should be detached from Buncombe and Vianna and attached to Goreville School District. In this case, Your Honors, the damage to Buncombe and Vianna is material and significant, not de minimis, as found by the Regional Board of School Trustees. Second, the finding that Goreville provided significant direct educational benefit was against the manifest weight of the evidence presented at hearing, which was tantamount to nothing more, Your Honors, than parental preference. And finally, even assuming arguendo that there was significant direct educational benefit, petitioners presented no evidence that Goreville was properly the community of interest. First, the more than de minimis change to funds. Petitioners have not met their burden to prove that the burden on Buncombe and Vianna is significantly de minimis in balance of the educational benefit to the children affected. Despite Duquette's holding that I want to acknowledge in the briefs, that general state aid is limited in terms of the Court's consideration, this very case proves the nature of the damage, the facts in this case prove the nature of the damage that can exist for a small school district. $220,000 roughly over nine years for four kids is not a de minimis loss of revenue for a small school district. Moreover, the revenue, contrary to the Circuit Court's view, the revenue of roughly $2,000, I think it's $1,400, loss of net revenue to the school districts in the A.B. in property value is not de minimis. It may seem small in light of the view of appropriate budget, but over the course of nine, ten years, roughly half a teacher's salary of direct loss of funds. It affects not just one or two kids, but all 65 kids that go to, between 63 and 67 kids as they fluctuate, that go to the school district at Buncombe and Vianna, as well as all the kids who then matriculate to Vianna High School. The loss of four students affects all kids in the district. As no evidence was presented by either party that such loss was irrelevant, or provided any evidence to believe that such loss would not cause pain, it should not be disregarded as de minimis. And, in fact, the only testimony as to what the effect of that revenue would be came from Ms. Tripp herself, who was the superintendent of Buncombe Grade School, who testified at length about the pain that that much loss of revenue would cause. The original Board of School Trustees' finding of significant direct educational benefit was also not supported by the evidence. The only experienced educator, Your Honors, who testified at hearing was the Buncombe superintendent. The Buncombe Grade School superintendent, Ms. Tripp, testified that multi-age classrooms were advantageous. In fact, she cited that there were a number of studies that had found that. The evidence was subject to no counter-argument. There was no rebuke fundamentally that multi-age classrooms are an educational benefit. And as such, it was the only testimony at hearing. Any finding otherwise doesn't meet with the evidence that was presented at the hearing. And how many years is that? It's like first, second, third, fourth? Does it keep going? Your Honor, in the record it identified that there were a number of multi-age classrooms. That doesn't tell me anything. I'm sorry? That doesn't tell me what happened. And I don't think in the record that there was a clear definition of exactly how many multi-age classrooms there were. When they quit that, they have a single. I'm sorry? When they go from double to single, you don't know that. I don't, Your Honor, although at the high school they're not. The record reflected that that's not the case at the high school, only at the grade school. Now, also, the other thing I thought I saw was that they're more or less almost surrounded by the other school district. In other words, they're just kind of portioned out. I don't have a map of it, but. Your Honor, Ms. Tripp testified at hearing that there are fingers of both school districts that move in and around each other. Well, then the other problem was the school bus takes another half hour, I think, to drive. They waste another half hour each way, don't they? Your Honor, according to the facts in evidence, the distance between the two school districts are. . . I'm not talking about distance. I'm talking about how the school bus goes. Your Honor, I think that Goreville, in the record, is the only one that has a school bus that goes there that the children aren't using. In other words, the route described in the . . . that is available to plaintiffs. . . I'm sorry, to petitioners. The route that is available to them isn't even being used. Because it takes a half hour extra? No, Your Honor, because there's no evidence in there that it was because it was a half hour extra. It's because I think . . . and I don't want to misstate, but my recollection is that it was because that was the direction that petitioner was going to . . . that petitioner was going anyway with the kids. Well, one's like six miles, the other's two miles or something like that? I think it's two and three, but yes, they're close. Two and three, okay. The statute, of course, changed. Which is the closest one? I'm sorry? Which is the closest mileage? I believe that Buncombe was closer by a hair. I mean, they're fundamentally the same. Okay. Excuse me, Mr. Braun, was there any evidence or testimony regarding whether the petitioners could pay out-of-pocket for putting their children in the other district? Yes, Your Honor, I think there was testimony that they could tuition them to the other . . . And what was that expense? I don't know off the top of my head. Was that part of the consideration of the court or not? Your Honor, I don't believe that the tuition was a fundamental part of that. It should not have been considered under the statute? No, I don't think that tuition is the standard set forth, although I think it does matter that there is an available alternate route for them to get access to a school of their choosing. If they want to go to Glorville, there is a mechanism, as Your Honor cites, to tuition into that school, which, in fact, they've identified in the record. Your Honor, the evidence was . . . I'm sorry. Although a shorter distance has been cited in many of the cases to provide educational benefit, it could not be and was not considered here because the statute changed. Within 10 miles, it's not . . . it's no longer a consideration. Therefore, the educational benefit of bus service is, at best, speculative. The children involved are not using the service now. And, in fact, Petitioner, when asked about it, and Petitioner was given a direct question on that very issue, isn't this potentially some benefit, paraphrasing from the record? And the closest she came to giving . . . the closest Ms. Darger came to giving a direct answer to that was, yeah, I suppose maybe sometime in the future. Your Honor, that itself is speculative because the routes as they go now, given the close distances of the two school districts, and the change to the statute, which prohibits us from reaching a decision on that when they're within 10 miles from the school district, a 10-mile difference, Your Honor, bus routes change. They change from year to year, and so do . . . But I thought there was some testimony in there that their friends all went to the other school. There was some testimony, Your Honor, that there were some neighbors that went to the other school. But the children here are very young and don't . . . and there was acknowledgment in the record that only one of them, I think at the time, was even going to the other school. There was also testimony that there were close neighbors going to Viam because of the nature of the various fingers that go around the particular property involved here. The distance between the two districts is de minimis, even acknowledged by Ms. Darden at hearing in Eddy 30. Perhaps more importantly, the testimony about extracurricular opportunities presented a fairly competent program. While Student Council existed at Goreville, Beta Service Organization also exists at Buncombe. Though there's no art club at Buncombe, the record reflects that there's plenty of art throughout the school system. There's art taught at the high school. Student art is encouraged and taught in the regular education classrooms, and whether there is a dedicated teacher referred to as the art teacher is simply irrelevant as to whether or not art is being taught by the school. In fact, both witnesses for the school district testified at length about the encouragement of art and the arts and the integration of students throughout both school districts, that is, Buncombe and Vianna. Buncombe also has plans for students to march at Vianna in the band, that's in the record at E56 and 57, and participate in their Scholar Bowl. Even if the regional board of school trustees had reasonably found educational benefit, in other words, it's a threshold decision before we move to the next part under the new law as to whether there's significant direct educational benefit. So even if they had properly found significant direct educational benefit to these students, the decision was still against the manifest weight of evidence. There was no evidence of any community involvement or natural tie to Goreville as opposed to Buncombe. In other words, this is a case about personal preference, and really nothing more. Something that sounds very much like Abel or Carver is citing in our brief. There was no evidence of any community involvement or natural tie to the Goreville community. In fact, the only evidence of involvement was involvement of petitioner parents to another community, another community where the parent worked. There was no evidence of involvement in community churches, community banks, community engagement. The evidence was instead presented about the parental preference. In fact, Ms. Darden testified she was aware of the property's attachment to Buncombe and Vianna when she moved. At the time she moved, she was aware that this was a property that was associated with Buncombe. The only evidence which seemed to associate the Dardens with the Goreville community was the fact that Ms. Darden needed to be within 30 minutes of the hospital where she worked, where she serves one of every three weeks that she's on call. Your Honors, as a parent myself, I acknowledge the pragmatic reality of making sure that you can participate as fully as possible within the child's educational program. But also as a parent myself, and as I think is identified in the circuit court, in the record in the circuit court, there's nothing in the record which suggests that either school district is required to assure that the parents are available at the maximum amount of possible times. It is important that there's parental involvement. But the lack of parental involvement signaled here is merely a one-in-three week occasional opportunity that might be a miss. Is this an intact family? Were there a husband and wife? Yes, Your Honor. Both testified at hearing. Is she a physician or otherwise medically? I don't believe that's in the record, Your Honor. Okay. Is it something about radiology or something? Yes, she does work in the radiology department at the hospital. It is certainly true that like all parents, one of the parents may have occasional lack of opportunity to participate in extracurricular involvement, but that occasional lack of opportunity isn't dispositive as to what constitutes community involvement. The court in evil found something more than mere preference or convenience is required. There's got to be a balance of factors here. There's got to be a balance of the detriment to the school districts against the benefit to the children involved, a detriment to the school district communities, as well as a benefit that is provided that is significant enough to overcome that detriment. And while we acknowledge that there is significant case law, to Your Honor's point, to Your Honor's point about involvement in the community being best for the whole child, well, there's certainly case law about that. That's not what was involved here. It simply isn't consistent with the facts that were presented at hearing. The regional board of school trustees' decision was clearly erroneous because the benefit to the annexing district was outweighed by detriment to the detaching districts. The uncontroverted evidence at hearing was that there was no substantial benefit to Goreville. In the record at E52, financially, it's nothing more than a drop in the bucket. And as a larger school district, it simply doesn't affect the nature of those filing. In other words, they have single classrooms and Buncombe has the combined classrooms. It doesn't have much of an effect on their educational program. Whereas at Buncombe, with just 65 students, it has an enormous effect. The interaction with the students is important. At Vianna, the loss is substantial because there is significant testimony in the transcript as to not only the financial burden, but the nature of the students and their involvement within the broader school community. And as was testified at length, the Buncombe students have been very successful at the Vianna School District. It was noted that they have routinely been valedictorian, that they've been very successful in the extracurricular programs offered by Vianna School District. It really is one community. There are four parts, Your Honors, to the standards. The difference between the school facility, distances to petitioner homes, the effect on the ability of each school district involved here, and there are three, to meet state recognition standards, and the impact on tax revenues to both districts. The uncontroverted evidence of hearing was there was no substantial benefit to Goreville, and therefore the only evidence of hearing was that there was a loss to Buncombe and Vianna. And because there was a loss to Buncombe and Vianna, that tips the scale. So now we're looking for some sort of benefit that's been provided. And again, Your Honors, to reflect my earlier point, the benefit to petitioners here is nothing more than parental preference. And as the court held in Ebel and Carver, it's got to be something more than mere parental preference. We'd rather the kids go to this school. Because when we move the land, it's important to understand we're not just talking about moving four kids from one place to another where they have an option to go to that school another way. It's the land itself. It's forevermore the land on which that property sits. Therefore, we're changing the fundamental parameters of what constitutes the school districts. Because there's loss to these two school districts, and because that loss is significant, and maybe more importantly because there just isn't significant benefit that the children are associated with the Goreville community, that the property is naturally situated within the Goreville community. It's certainly true that communities evolve over time. And I think if you look at the case law, the courts, I might cite Avoca for this, the courts acknowledge fundamentally that the parameters of the territory within a school district do change over a long period of time. That there may be a road that intersects them as there was in Avoca. That there may be something else that changes. And that might cause a school district property to become associated with a different place over time. There's no such evidence here that that's the case. This was nothing more than parental preference. And because it was nothing more than parental preference, Your Honors, we would argue that there simply isn't enough direct educational benefit for the students, and thus the loss to the school districts outweighs. Therefore, we ask that the court reverse the decision of the Regional Board of School Trustees and issue an award so finding.  Thank you, Your Honor. May it please the court, counsel, my name is John Schneider. I represent the Darden family in this appeal. It is our position that the Regional Board of Trustees did not commit an error in their decision, and their decision is supported by the evidence in the case. The first problem to look at is the impact on the funds and the assets as to the school districts involved. As I went back and prepared for today's argument, I noticed that unlike the Regional Board of Trustees, who I do not believe committed any error, I failed to address an important part of the record that I don't think either counsel addressed in their briefs, and that's the evidence that was Petitioner's Exhibit N, which is found on E-220 in the record. And that's Mr. Mott's evidence of the comparisons of the Vianna School District, the Buncombe School District, and the Gloryville School District as to taxes. And lawyers sometimes, like myself, make the mistake of getting too focused on the trees and not taking a step back to the forest. There was evidence in this case, not just Ms. Tripp's evidence or Ms. Darden's evidence, but there was evidence submitted as to the comparisons of the tax impact, the financial impact on these school districts. That, I believe, in and of itself is enough for the Regional Board of Trustees to decide that it has a minor impact or de minimis impact on the school changes, the annexation and detachment being allowed. There was also evidence and testimony of whether the people objecting to this, the school districts objecting, did they bring any evidence in to substantiate the figures of these nine years that they claim was a $200,000-something loss to the school district. I think in weighing the evidence and the credibility of the witnesses and all those things that the Trier Fact does, and in this situation the Regional Board of Trustees, I think they can weigh that out to see whether that is substantiated by any records or documentation or anything of that nature. And in this case, they made a finding that if you take all that into perspective, which I pointed out in my brief, is less than a 2% impact. What these school districts now want to say is a major impact because there are 65 students, but when you do the math, it's a less than 2% impact. And I think that the Regional Board of Trustees was well within their right to make that finding. They weighed the evidence and they made that finding. If you go to the community of interest and the direct educational benefits, we started with the BUS, the direct educational benefits. So when I tried this case, I looked at it from the perspective of what does this school offer and what do these schools offer? What's important to these parents? What's important to other parents? The BUS was an issue that became of importance to both sides in this case because it's addressed in the record. The Darden family, Miss Darden, actually testified in the future. This was about whether the children would ride the BUS in the future maybe when they get bigger. This is on E29 and E30 of the record. Not immediately, but I do anticipate once two of them are in school together, they can ride the BUS together, which would be two years from now. And yes, they will utilize the BUS transportation. That's not speculative. That's a plan. And there's evidence in the record that the Goreville School District has no BUS. I'm sorry, the Buncombe School District has no BUS. It's only the Goreville School District that provides BUS transportation to this family. And there's nothing in the record to indicate that that was ever going to change by the Buncombe School District, that they were going to provide a BUS or they anticipated providing a BUS for this family of four children that are about to go to school. Then we go on to talk about the extracurricular activities. Miss Darden testified that it was extremely important for her children to be involved in extracurricular activities. She went through those extracurricular activities that are offered by the Goreville School District. She also went through the activities that are not offered at the Buncombe School District. The Buncombe School District called a school board member to the stand who also acknowledged how important extracurricular activities were for the children. But then we find out in her testimony that not only do some of these extracurricular activities not exist at the Buncombe School District, but the ones that they can provide some of those, they BUS to an even farther away school district that's away from Buncombe. So in this situation, and this ties into the involvement of the parents, not only do we have a parent that's going to be on call and needs to be close to a school district, but also places her in a position that if her kids continue to go to the Buncombe School District and her BUS to a different location, that puts her an even farther distance from that school district. She also testified that the school had higher test averages at Goreville. I think that's something in the educational welfare of the children that this regional board of trustees could take into consideration. So from the Buncombe side, we had no bus transportation offered to these children. Some of the extracurricular activities were lacking. Even though some of those things were provided, they were provided somewhere else. Possibly they had a plan in the future for some of those to be provided. In the record, Buncombe, Ms. Tripp testified that at their school, and I can appreciate this concern, but the students are focused on whether they're being fed and whether they got sleep the night before is I believe what she said. But yet, we also want to say that we want kids to be taken care of, but it's okay for mom not to come to extracurricular activities. It's okay for mom to go to her work and provide for her family, but when it comes down to being there, somebody, in fact they've said it several times in this case, it's okay for somebody else in the family to be there. Well, how do we on the one hand say that we're so concerned about these children who are not being fed and slept, but we don't have the same concern for the Darden family whose parent says she wants to be involved with these children. That's correct. That's correct. What about the other parent? I presume it's the husband. He testified at the hearing, Your Honor, and just said simply that he was in support of his wife's testimony and wanted also to be involved with the children and have extracurricular activities. But was there any evidence that he was unable to be involved?  What I'm talking about, she testified that she was restricted in some respects. Was there any, we're just assuming that he was able to be involved. Yes, Your Honor. What you're really talking about is both parents, you're wanting both parents to have an unlimited opportunity to be involved extracurricular. Well, I think when you have a situation where you've got one school district that the parent can be within the 30-mile range, wants to be a part of that extracurricular activity, wants to go to sporting events, wants to go to Christmas parties, wants to go to holiday events, I don't see any reason why we don't take that into consideration. Oh, I'm not saying we shouldn't take it into consideration. No, I understand that. I'm just wondering about the other half of the equation. Well, if you're asking for my personal opinion, I think both parents that you have in a two-family, two-parent family. I'm not really asking about your personal information. I was wondering what was on the record, and I think you've answered that. My husband just testified that he supported his wife's testimony and that he wanted to be involved as well, Your Honor. There was also a discussion in the briefs of whether the comparisons of the Vianna school district was addressed, and the record indicates that the school districts of Vianna and the Goreville school district was comparable. So I think this came down to, and rightfully so, the objection that was made was whether Buncombe school district is affected by this and whether Goreville is affected by this, and ultimately if that effect is minimal, then what's the direct educational benefit to these particular children? I want to ask you something that was raised by the school districts, and that is that the idea, and it's not an idea, it's the reality that this would run with the land, so to speak, and so it's in perpetuity unless somebody else, you know, asks for similar consideration. So the next person, let's say they up and move, she gets a different job with a different hospital in a year after we have allowed the detachment, and these people find it inconvenient for all the similar reasons, and they want their children to go back to the school district. Isn't that kind of a slippery slope where you're just, you know, carving out preferences for individual circumstances of each family that lives on a piece of property? I think if you're looking at preference, I think the court has addressed that and said that you cannot base a decision based on preference alone. So without guessing as to what somebody would do in the future, what we do have in the record in this case is that the Darden family, actually it's a side-by-side family, the grandfather and grandmother live on the basic same site or in close proximity to this site, and the Darden families have a manufactured home that was placed on their parents' property. I think the record shows that it was purchased and deeded. That's the reason all four of these individuals were part of this, because they are the family unit. There was nothing in the record about their intent to move or leave. The grandparents don't have any children, so they're not really an issue. That's correct, Your Honor. By statute, they were, as a part of the petition that was initially made, they had a say-so in the request for the detachment annexation because of their close proximity. But no, I think courts in the future would have to go back, or even our regional board of trustees would have to go back and first decide, is this just a matter of preference? Are they just simply wanting to move? And I don't think this court, by deciding that this regional board of trustees was correct in their findings, goes into that detail, because this isn't about preference. This isn't just, we want to go to this school district, we want to go to that school district. Well, it's partly about preference for its chair. I mean, you conceded that it's about preference, and we're talking about weighing, balancing the equities, essentially, aren't we? I think you're weighing the evidence that was submitted as to whether, the way I read the regional board of trustees' findings in this case, I don't think that they played into what the DARM's preference was. I don't think this was solely about preference. No, no, no, you're saying two different things. Nobody's saying it's solely about one thing or the other. It is a balancing act, correct? Absolutely, Your Honor, absolutely. And my clients want what's best for their children. That's an opposite. I would say that. I think most parents do. If we wouldn't be here, if they didn't want what's best for their children. I don't think this court set any kind of precedent that we go back and later we get to do what we want to do, because this regional board of trustees, in this particular case, made the findings that they did. The findings that they made were based on the information that they were given, the financial impact as to all school districts, and the direct educational benefit, and the community of interest for these particular children who want to be involved. And even some of those issues are personal preference. Maybe they want to be involved in a particular church in that community, or maybe they want to be involved in a particular extracurricular activity, soccer. So it's all intermingled in my mind, the personal preference versus the other considerations. I think you're correct, Your Honor. It's hard to split those things up. Thank you. But if you look at what a school district offers, it is about what's in the child's best interest and the preference of the parents. Obviously, if we had a program that no kid showed up to play because they didn't prefer that sport, I doubt they would continue to be a sport. So what we have is what this school district offers for the benefit of these children, and in light of that, that's what my clients prefer is what's best for their children. The same things that the regional board of trustees took into consideration for the direct educational benefit of these particular children. I would ask that you affirm the regional board of trustees' decision and not overturn that decision on this appeal. Thank you. Thank you, Your Honors. I just want to speak briefly to three points. First, counsel said, and I think he's correct, this is less than a 2% difference in EAD. To suggest that 2% of the school district's budget, particularly a small school district's budget, I concede that if it were Chicago Public School District, 2% may be a drop. But while Carver found half a percent, less than half a percent is not serious, I'm not aware of a case that says 2% isn't serious, particularly for a small school district. 2% is a lot of money. A 2% pay decrease would be unsustainable for some small families. The same thing is true for a small school district. Second, the differences in the bus service, which we've had some discussion about and I think is important to get right. Counsel is absolutely right about what the record reflects in terms of that bus service and the plan for the parents. It's also true that that plan is a future speculation about what will happen two years from now or at some point later. But the kids, yeah, the kids will ride the bus, I think is what she says, what Ms. Darden says, and I think that's important. Moreover, as I indicated in my first argument, the distance is short for both school districts. And with regard to the 30-minute limitation, the 30-minute limitation comes down not to the bus but rather to the commute to work, which occurs at the next paragraph on the next page of that transcript. So I think it's important that when we're talking about distances to the schools, not only are we prohibited by statute from consideration, but we're also prohibited by the statute. I'm sorry, it's also true that the distances to the schools is not the primary issue but rather the distance to the parents' working opportunities, the distance to where the parent has to be within radius for the purposes of their job. That brings me to my final point, which is the community of interest. All of the evidence about extracurricular participation is important, and it's certainly important under the Court's reasoning in lots of the cases, Duquette, School District 106, it's certainly important that the parents be involved here. But the community of interest is what we're talking about when we talk about the whole child and participant of the child in the community that the land is naturally associated with. And there simply wasn't any evidence presented at hearing that that land was naturally associated with the Glorville community. It's only naturally associated with that particular parent's preference and that particular parent's working opportunity, which isn't in the Glorville community. And I think that's an important point. It's in a foreign location. It's in some other town that is not a part of this hearing. Because of that distinction, we think it's incredibly important that this Court look at the totality of the evidence and find that the detriment to the school districts, Buncombe and Vianna, was outweighed, was not outweighed by the benefit provided to the parents and to the Glorville School District. Thank you, Your Honors. Thank you. Thank you for your consideration. Order OB.